DOMENIC CAPASSO *vs.* FIRESAFE BUILDERS PRODUCTS CORP.

NOVEMBER 26, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is an original petition under the workmen's compensation act, general laws 1938, chapter 300, by an employee seeking compensation for partial incapacity for an alleged back injury resulting from two dis-

tinct accidents arising out of and in the course of his employment by the same respondent. The petition alleges that he was injured as the result of an "electric shock" on November 5, 1944, and that on July 14, 1945 he hurt the lower part of his back and side while "lifting tools." The Massachusetts Bonding and Insurance Company was respondent's insurance carrier in November 1944 and The Travelers Insurance Company was such carrier in July 1945. After a hearing in the superior court a decree was entered denying and dismissing the petition, whereupon the petitioner duly prosecuted his appeal therefrom to this court.

There is no evidence in petitioner's case to support the allegation in his petition that he sustained a compensable injury as a result of an accident while lifting tools. Notwithstanding this the respondent proceeded to a full hearing on the merits contending: first, that there was no second accident, as claimed by the petitioner; and, secondly, that his ailment, if any, was not the result of an accident but was due to disease induced by the unfavorable conditions under which he had worked for a long period of time. It appears in evidence that before entering respondent's employ and there learning welding in connection with wartime work, the petitioner had theretofore worked at light, sedentary employment in factories that were heated in cold weather. The place where the petitioner worked for the respondent as a welder on pontoons was damp and unheated.

Whether the petitioner had an accident in July 1945 rests entirely upon the credibility of his own testimony. He testified in substance that on November 5, 1944 he injured the lower part of his back when he struck the edge of a pontoon while falling backwards to the ground as the result of an electric shock from a welding machine that he was using. On that occasion the nurse in respondent's first-aid room treated him for bruises on his left hand and also gave him some ointment for his back. He returned

to his ordinary work without loss of time and thereafter continued to be regularly so employed, even working overtime when required.

The petitioner further testified that in July 1945 he again injured the lower part of his back when, in descending from the top of a pontoon where he was working with another welder named Buffi, he stepped on a stool which tilted and threw him backwards against the edge of a nearby pontoon. He then said to Buffi: "Gee, I won't be able to work." Whereupon the latter, who according to the petitioner did not notice the "spill" as Buffi "was on the other side," advised him to report to the foreman and then go to the first-aid room, which he did. He could not recall the name of the foreman, nor was he at all certain as to the date of the accident, although he finally fixed it as July 14, 1945. When closely questioned on cross-examination as to why he came to fix that date his testimony was as follows: "They told me I got to remember the dates. Q. They told you you had to have some date, didn't they? A. Some date, that is right, to start anything."

Fred DiNapoli, the petitioner's foreman, testified that he received no report of an accident from the petitioner in July 1945. The nurse in charge of the first-aid room testified that her only knowledge concerning the matter was by reference to her entries in respondent's accident report, which she produced and used while testifying. In this report, which was undated, the date of injury was "7-9-45," and the petitioner's complaint was described as follows: "Employee believes that he sprained his back by working in the pontoon room."

The record is clear that the nurse sent the petitioner to Dr. Paul J. Rozzero, but when she did so is uncertain. However, the doctor, using his office records, testified that the petitioner came to him on July 12, 1945 complaining of pain "About the mid back" but gave him no history of any accident. On examination the doctor could find no

objective evidence of injury but he strapped petitioner's back and told him to return to work.

On July 17, 1945 the petitioner consulted Dr. Simon G. Lenzner. His testimony was to the effect that the petitioner gave him a history of the two accidents hereinbefore mentioned; that the only objective symptom of injury found by him on examination was some "spasm" of certain muscles of the back; that at first he attributed his complaint to a nontraumatic kidney ailment and treated him accordingly; that he later had the petitioner X-rayed by Dr. Eugene A. Field and examined by Dr. Americo A. Savastano, an orthopedic specialist; and that since the examinations of those two doctors were negative objectively, he finally decided that the petitioner was suffering from "a traumatic myofascitis of the muscles of the spine," which condition could be attributed to either accident.

In the course of a lengthy cross-examination Dr. Lenzner testified that petitioner's condition at the time of his examination was not an "acute case" of injury; that under those circumstances the spasm of the muscles of the back was not always indicative of a traumatic injury but was also consistent with disease from natural causes; and that myofascitis could be due to working for a long period in a damp, unheated place. In his office records the date of the second accident appears as "3 wks. prior to 7/17/45." In a letter to the respondent's insurer under date of August 30, 1945 the doctor, referring to the history that he had received from the petitioner, stated that the latter had "been complaining of pain in his back for the past year, or since last winter when he claims that he fell off a pontoon while at work. * * * The diagnosis of traumatic myositis does not seem appropriate since this pain has lasted such a long period of time." On being asked why he failed to mention the second accident in this letter his answer was: "Because I wasn't concerned with the recent accident, that is why. I didn't even give it a thought. That didn't concern me."

Doctor Savastano, who was called as a witness by the respondent, testified that the petitioner told him that he had been in two accidents while working for the respondent, one in November 1944 and the other on June 17, 1945. The only evidence of back injury found by Dr. Savastano was a slight limitation of forward bending. The substance of his medical opinion was that, in the absence of any other cause, petitioner's back condition could be attributed to an accident, but he also testified that such condition was not necessarily of traumatic origin and that it could be caused by working for some two years in a cold, damp place, as this petitioner had done.

The substance of testimony by Dr. William H. Palmer, who examined the petitioner in behalf of the respondent on July 27, 1945, was that his only complaint was lameness in the lower back on arising from bed; that such lameness had troubled him "for about a year previously"; and that he had consulted Dr. V. J. Oddo as recently as July 9, 1945 for that condition. Doctor Palmer, who found nothing of an objective nature to explain petitioner's complaint, further positively testified that he received no history of injury by accident from him. There was evidence, however, from the petitioner himself that on or about June 9, 1945 he had consulted Dr. Oddo for pain in the back, tentatively attributed to a cold or some kidney ailment. Doctor Oddo did not testify.

We have referred to the testimony in some detail to make it clear that the evidence was conflicting and open to reasonable inferences which could fairly lead to different and opposite conclusions, especially since credibility was an important question at issue. On the evidence before him, which was further conflicting or contradictory on matters not hereinbefore mentioned by us, the trial justice made two findings: first, that although the petitioner had sus-

tained an injury by accident on November 5, 1944, he had failed to prove by a fair preponderance of the credible evidence that such injury was compensable; and, secondly, that he had failed to prove "by a fair preponderance of the credible evidence that he sustained an injury by accident arising out of and in the course of his employment on or about the 14th day of July, 1945, while in the employ of the respondent corporation."

To prevail in this court the petitioner, who makes no claim of fraud, has the burden of showing that the findings of fact by the trial justice are not supported by any legal evidence. If there is such evidence, his findings are binding upon us by force of the act. The suggestion by his counsel that the contradictions in petitioner's testimony as they appear of record were the result of confusion due to his limited education is not a matter for our consideration. Were we to entertain such suggestion we would in effect be passing on the weight and credibility of his testimony. The resolution of that question falls within the realm of fact finding in which the action of the trial justice is conclusive. The weight of all the evidence as well as the credibility of the petitioner and the other witnesses were matters for the consideration solely of the trial justice. *Rosewater* v. *Jean's Inc.*, 72 R. I. 489. Referring more particularly to petitioner's alleged accident of July 1945, the trial justice was not bound to accept his testimony on that point as true and treat it as undisputed evidence, even though the respondent produced no direct evidence in conflict with such testimony, when, as here, other facts and circumstances raised a fair question of his credibility. *Parmentier* v. *Moore Fabric Co.*, 71 R. I. 369.

After a careful consideration of the entire record, we are unable to say that the findings by the trial justice are not supported by legal evidence, and therefore we cannot disturb them.

464

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Roger L. McCarthy,* for petitioner.

*Boss & Conlan, Francis W. Conlan,* for respondent.

*Carroll & Dwyer, Edward F. J. Dwyer,* for Massachusetts Bonding and Insurance Company.

AMBROSE P. McCOY *et al. vs.* JOHN H. NOLAN, ATTY. GEN. *ex rel.* PROVIDENCE JOURNAL COMPANY *et al.*

NOVEMBER 26, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is a petition for a writ of certiorari directed to the superior court for the purpose of quashing portions of the record in a certain mandamus proceeding pending in that court in which John H. Nolan, Attorney General et al. were the petitioners and Ambrose P. McCoy et al. were the respondents. Pursuant to the writ which was duly issued, the record of such proceeding was certified to this court for our consideration.

An examination of that record shows in substance the following facts. After the petition in the mandamus proceeding had been filed in the superior court a citation was issued, returnable in due course, directing the respondents therein, petitioners here, to appear and show cause why the prayer of the petition should not be granted. That petition in general alleged that certain named officers of the government of the city of Pawtucket were wrongfully withholding from the petitioners, respondents here, alleged public records relating to tax abatement or cancellation information respecting persons in that city, and prayed that the superior court issue its writ of mandamus directed against such officials and each of them commanding them to make available forthwith such information.

In response to that citation the respondents below, petitioners here, appeared and filed a demurrer to the petition for mandamus and also a motion that certain paragraphs be stricken therefrom. Thereupon the petitioners in the mandamus proceeding filed a motion to dismiss the demurrer and the motion to strike. Such proceeding came on for hearing on the above demurrer and motions before a justice of the superior court who overruled the demurrer and denied all the motions. Thereafter, however, instead of issuing an alternative writ of mandamus he entered an order which contained, among other provisions, the following paragraph: "Fourth. That the time for the filing of an answer or 'return' herein by the respondents is hereby fixed and that the respondents are hereby ordered to file their answer or 'return,' if any is to be filed, on or before the 5th day of June 1948."

The petitioners here contend in substance that the superior court committed error in issuing the citation in the mandamus proceeding and in entering therein that portion of the order of May 19, 1948 which required them, as respondents in that proceeding, to make a return or answer thereto before a certain date, instead of ordering the issuance of an alternative writ of mandamus. On the other

hand, the respondents in the case now before us, petitioners below, maintain that the above questions cannot properly be raised by the instant petition for certiorari and that the disputed steps taken by the superior court in the mandamus proceeding were valid and proper in the existing circumstances. It is clear, therefore, that the matters now to be considered relate only to procedure therein and have no bearing on the merits of the issues in that proceeding.

At the outset we have considered the contention of the respondents herein that certiorari is not the proper remedy to review the alleged errors of law in the record of the mandamus proceeding. Without discussing the point at length we are of the opinion that the petitioners herein may properly employ the remedy of certiorari in the present circumstances. Such remedy may be used to have this court determine whether the tribunal under examination, in this instance the superior court, acted without or in excess of its jurisdiction. Secondly, in our judgment the instant petition also comes within the principle of law set out in *White* v. *White*, 70 R. I. 48, and cases therein cited, namely, that the writ of certiorari may lawfully be employed in the exercise of our revisory and appellate jurisdiction to correct certain errors committed by inferior courts and tribunals when the furtherance of justice requires it in order to avoid great injury or unusual hardship. Under this principle we are of the opinion that it is proper and necessary to entertain this petition now in order to have determined immediately the general practice which should prevail in ordinary common-law mandamus proceedings and to afford the petitioners here their full procedural rights where timely insistence thereon has been made.

In the case now before us the chief issue is raised by the above procedural question. Its determination requires a consideration of the nature of mandamus in this state and what ordinarily constitutes correct procedure in a petition of that kind. Speaking generally, our mandamus proceedings both as to legal principles and procedure are gov-

erned by the rules of the common law. The writ of mandamus is prerogative in its character and is issued in the exercise of the discretion of the court having jurisdiction to so act. *Dintenfass* v. *Amber Star Films Corp.*, 39 R. I. 555.

In this state there is no constitutional or statutory provision which does away with the necessity of following the usual practice in the ordinary common-law mandamus proceeding. It is true that there are certain provisions which have come to our attention, such as general laws 1938, chapter 326, §1, relating to restoring names of electors to the voting lists, and G. L. 1938, chap. 495, §2, relating to the exercise by this court of its supervisory powers to correct errors and prevent abuses. But both of these statutes relate to particular and extraordinary cases where no adequate remedy otherwise exists, where the ordinary writ of mandamus would not be effective, and where the writ is used by the court to effectuate its revisory powers and to do justice in certain extreme and unusual circumstances. The record of the proceeding certified for our consideration shows that it was one in ordinary mandamus and does not call for extraordinary procedure. Therefore cases in this state where the practice was not in issue or passed upon and cases from other jurisdictions where the general practice in mandamus has been altered by statute are of no value as precedents in determining what is the general and established practice in ordinary common-law mandamus.

The law relative to what constitutes established and correct practice and procedure under the rules of the common law as applied to *ordinary* cases involving petitions for mandamus is well settled and apparently is not seriously questioned by the present respondents. In 18 R. C. L. 340, §293, the following statement on this point is made: "On the filing of the petition the common law practice is for the court in mandamus proceedings to issue an order to, or a rule on, the respondents to show cause why a manda-

mus should not issue granting the relief sought in the petition. If the cause shown be deemed insufficient, then a mandamus in the alternative issues, to which a return is to be made; and if good cause is not thereby shown for not doing the thing, then a peremptory mandamus issues."

In *Varanelli* v. *Luddy,* 132 Conn. 113, the court, in discussing proper procedure in ordinary mandamus, uses this language at page 116: "Upon an application to the court for the issuance of the writ, it may or may not order a rule to show cause directed to the respondents named in it and to other interested parties; the alternative writ is in itself an order to perform the act directed or to show cause to the contrary; ordinarily, therefore, no purpose is served by a rule to show cause issued on the original application for the writ; and it should be directed only when unusual circumstances suggest that the matter should be disposed of with all possible speed. If the court grants the application, the alternative writ issues. The respondent must then perform the act directed or appear and show cause why he does not do so, by proper pleading. The alternative writ is the equivalent of the complaint in an ordinary action and all subsequent pleadings must be addressed to it." See also the following authorities which are to the same general effect: *Fisher* v. *City of Charleston,* 17 W. Va. 595. 35 Am. Jur., Mandamus §§347-349; High's Extraordinary Legal Remedies (3d ed.) 11, §8; 36, §30; 497, §537; Merrill on Mandamus, 315, §250; 318, §253.

It is clear, therefore, that in the ordinary mandamus proceeding correct procedure in this state requires that an alternative writ be issued unless such practice is altered or excused by agreement of the parties, or by conduct clearly amounting to agreement or waiver, with the consent of the court, or when it is otherwise provided by statute. The issuance of an alternative writ is not a mere formality but is a matter of consequence, as plainly appears from the above citations. In fact it is considered as the first

actual pleading in the case and takes the place of the declaration in an ordinary action at law. Its use is especially necessary when the facts upon which the respondents' alleged duty is premised may be in dispute and when such disputed issues, if any, will be made clear upon the return of the respondents to the alternative writ.

The respondents here contend, however, that even if it is assumed that in ordinary mandamus proceedings the correct procedure in this state is as above set out, it was impliedly waived by the parties, and in particular by the petitioners here, so that the original petition in mandamus took the place of the alternative writ and the issuance of such a writ became unnecessary and improper. We are unable to agree with this contention. To be effective any such waiver must first be clearly shown by stipulation or by unequivocal conduct amounting to such waiver, with the consent of the court. No such showing has been made. In fact respondents in the superior court, petitioners here, specifically stated in their demurrer: "Now come the respondents, and each of them, (without waiving the issuance of an alternative writ and reserving all their rights because of the non-issuance thereof) hereby demur to the relators' alleged petition and say * * *."

The respondents here also urge in substance that an examination of a considerable number of cases decided by this court involving petitions for the issuance of writs of mandamus shows that the alternative writ has seldom been issued, particularly in recent years, and that the original petition as filed has been treated as the equivalent of the alternative writ. They argue that such procedure has been generally adopted as the standard practice and the established custom and usage of this court; that it was correctly followed in the mandamus proceeding now pending in the superior court; and that such practice has in effect abolished, or become a substitute for, the use of alternative writs in proceedings of that nature.

Upon consideration we do not agree with this contention. An examination of the cases referred to by respondents here will show that the question of correct procedure was not raised or passed upon by the court in any of those cases. This is conceded by them and they also admit that early practice in this state in mandamus petitions ordinarily followed the procedure as at common law which included the issuance at the proper time of an alternative writ. Moreover, our examination of the cited cases also shows that where an alternative writ was not issued the parties, without objection from the court, waived the issuance of an alternative writ, or agreed to treat the original petition as such a writ for the purposes of pleading and making return, or only a single question of law was involved, not based upon controverted facts, and could be determined as well on the merits of the petition. Such cases, therefore, are not binding authority when the question of correct and orderly procedure in the ordinary case for common-law mandamus is raised, as in the instant petition, and when such procedure has not been waived by agreement or conduct but has been expressly insisted on by the respondents below, petitioners here.

In view of the record before us we are of the opinion that the established and recognized practice and procedure, such as we have hereinbefore indicated, should be taken in the mandamus proceeding pending in the superior court. In the past this court, when called upon in ordinary cases, has recognized and followed such regular common-law practice and procedure and has issued alternative writs of mandamus. The following cases are some instances where the court has so acted. *Sleeper* v. *Franklin Lyceum,* 7 R. I. 523; *Cole* v. *Fire-Engine Co.,* 12 R. I. 202; *Briggs* v. *Hopkins,* 16 R. I. 83; *Portland Stone Ware Co.* v. *Taylor,* 17 R. I. 33; *Sweet* v. *Conley,* 20 R. I. 381; *Leonard* v. *Clark,* 24 R. I. 470; *Sullivan* v. *Reynolds,* 39 R. I. 438. It will be noted that initial proceedings in the *Cole* case resemble those in the case now under consideration.

472

*J. Frederick Murphy, Aram A. Arabian,* for petitioners.

*John H. Nolan,* Attorney General, *Archie Smith,* Assistant Attorney General, *Edwards & Angell, William H. Edwards, Gerald W. Harrington, Edward F. Hindle,* for respondents.