JOSEPH BARBIERI *vs.* E. M. YOUNG COMPANY.

DECEMBER 23, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is an employee's petition under the workmen's compensation act, general laws 1938, chapter 300, article II, §5, as amended, to recover medical expenses in addition to the maxima therein specified. From an adverse decision by the director of labor the petitioner appealed to the superior court where, after a hearing *de novo*, a decree was entered denying and dismissing the petition. The case is before us on the employee's appeal from that decree.

The only medical evidence in the case came from petitioner's personal physician who, disclaiming special knowledge of neurology and psychiatry, qualified as a physician in general practice and a specialist in internal medicine and cardiology. It appears of record that on December 7, 1949 petitioner fell upon snow-covered ice in the course of his employment by the respondent. On or about December 20, 1949 he consulted his physician and, excepting for short intervals when he was hospitalized for observation, petitioner has remained under his care ever since that time. In the preliminary agreement entered into between the parties on February 13, 1950 the injuries caused by the fall are described as contusions to the left shoulder, occiput and brain, for which petitioner has been receiving compensation for total incapacity at the rate of $28 a week. Between the time he first went to the doctor and December 12, 1951, the materiality of which date will presently appear, petitioner, at the doctor's request and with the approval of respondent's insurance carrier, was sent to three hospitals and was further examined at different times by a number of specialists in orthopedics, neurology and psychiatry for diagnostic purposes. There is no evidence from any one of those institutions or doctors with reference to the result

of their respective examinations or the efficacy of the treatment administered to petitioner. During the above-mentioned period the insurance carrier voluntarily paid about $3,000 for medical expenses, of which sum petitioner's doctor received $1,181.

The evidence further shows that on December 12, 1951, the date to which we previously directed attention, the insurance carrier notified the doctor that thereafter it would not be responsible for petitioner's further treatment by him. Notwithstanding such notice he continued his administrations of "depo-testostertone" and vitamin B-12, usually by injection, to improve petitioner's general physical condition. Although the doctor testified that he considered such treatment beneficial, he did not say that it would cure petitioner's ailments, which apparently were entirely subjective and "psychosomatic" in character. The medical expenses claimed for the period from December 12, 1951 to March 24, 1953, on which latter date the instant petition was heard in the superior court, were $742.50 for the doctor and $205.30 for medicines.

There are certain aspects of the doctor's testimony that could be reasonably construed as material inconsistencies. In cross-examination he admitted that in his letter of April 9, 1951 he informed the insurance carrier that petitioner had "many complaints which in my opinion because of the tremendous amount of *negative investigations* are probably on a psychosomatic basis." (italics ours) As defined in Dorland's Medical Dictionary (21st ed.), the term "psychosomatic" means "pertaining to the mind-body relationship; having bodily symptoms of a psychic, emotional or mental origin," apparently a field of medicine requiring special knowledge, which the doctor disclaimed.

Further cross-examination showed that in the department of labor he testified that petitioner's condition had "remained stationary now for several months"; that "medically" the treatment he was administering "can't cure him

of his problem"; and that "As far as I am concerned right now my reason for coming here is to first be paid for medical expenses and secondly, I think he is in need of further treatment neurologically and medically combined."

At the time the case was heard in the superior court on petitioner's appeal from the adverse decision of the director of labor the doctor seems to have advanced a different opinion from the one previously expressed. In substance he there testified that at the hearing in the department of labor he was "Not particularly" aware of the *legal* problem involved; that following the decision by that department he had changed his mind "somewhat"; that presently he believed that petitioner's physical and mental condition had greatly improved under his treatment; and that although he had stated in his letter of April 9, 1951 to the insurance carrier that petitioner's complaints were probably basically psychosomatic, he "wouldn't say that today" as the latter "could conceivably still have residual organic brain damage." Further reference to the doctor's testimony is unnecessary.

The question for determination by the trial justice was a narrow one, namely, whether the treatment rendered and medicines prescribed by petitioner's physician from December 12, 1951 to March 24, 1953 were necessary to effect the cure or rehabilitation of the injured employee. The issue of whether petitioner should or should not receive specialized treatment in the future for his present condition of total incapacity was not involved in this proceeding. Confining himself to the question actually before him the trial justice in his rescript carefully reviewed the evidence and held that petitioner had failed to prove his case by a fair preponderance of the evidence as required under numerous decisions of this court. The decree appealed from contains four findings of fact with reference to the treatment given by the doctor and the medicines prescribed by him. Briefly stated, such findings set forth that neither the treatment nor

the medicines were necessary in the past or will be necessary in the future for petitioner's cure or rehabilitation.

The pertinent part of the statute upon which petitioner relies was construed in *LeClair* v. *Textron Mills, Inc.*, 77 R. I. 318, to which reference is hereby made. We there held that the statute provides for the payment of extended medical care and expenses in cases of specialized or prolonged treatment "necessary to effect a *cure or rehabilitation* of the injured employee." As in all other instances where a person has the affirmative of a given proposition, the burden is upon him to establish his claim by credible evidence of probative force. In the instant case it was a question of fact whether the uncorroborated and in certain respects inconsistent testimony of the doctor was sufficiently persuasive to establish in the required manner that his treatment of petitioner for the period herein mentioned was of the character contemplated by the statute.

To prevail in this court petitioner has the burden of showing that the findings of fact by the trial justice are not supported by any legal evidence. With knowledge of such well-established rule, he contends that the trial justice misconceived the evidence and argues as if it were undisputed and unimpeached, which is not the fact. The doctor's testimony was open to an interpretation which, at least by way of reasonable inference based upon credibility, could fairly lead to different and opposite conclusions. On the basic question in issue the trial justice was not bound in the circumstances to accept and treat his testimony as undisputed and unimpeached evidence, even though respondent produced no direct evidence in conflict therewith when, as here, other facts and circumstances raised a fair question of his credibility. *Capasso* v. *Firesafe Builders Products Corp.*, 74 R. I. 458.

The weight of the doctor's testimony as well as his credibility as a witness were matters for the consideration solely of the trial justice. It is also well settled that a conclusion

of the court by way of reasonable inference from competent evidence is a finding of fact. We are therefore of the opinion that there was legal evidence to support the finding of the trial justice and that his decision was without error.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Dick & Carty,* for petitioner.

*Boss & Conlan, James C. Bulman,* for respondent.